IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANNE L. MAHER SCHNOOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 03 C 4972 |
| | ) | |
| PUBLICATIONS INTERNATIONAL, LTD., | ) | Magistrate Judge Nan R. Nolan |
| an Illinois Corporation | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Anne Maher Schnoor has sued defendant Publications International, Ltd. ("PIL"), her former employer, for violations of the Family and Medical Leave Act of 1993 ("FMLA" or "the Act"), 29 U.S.C. § 2601 *et seq.* Specifically, Schnoor alleges that PIL violated § 2615(a) of the FMLA by failing to grant her leave to which she was entitled and by terminating her employment in retaliation for exercising her statutory rights under the FMLA. The parties have consented to a decision by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), and this matter is now before the court on PIL's motion for summary judgment. For the reasons explained below, the court grants summary judgment in favor of PIL.

### I. BACKGROUND FACTS[1]

In May 2001, PIL hired Schnoor for the position of Account Director, Magazine Division, at an annual salary of $112,000 plus commissions against all revenues produced as well as other fringe benefits. Schnoor's job responsibilities involved selling various goods and services to

---

[1] The background facts were taken from the parties' statements of material facts, submitted pursuant to N.D. Ill. Local Rule 56.1. These facts are undisputed unless otherwise noted.

packaged good companies and other food-related companies and service providers.

On July 30, 2002, Schnoor informed PIL's human resources department that she was pregnant and anticipated taking pregnancy leave of six weeks when her child was born. Schnoor subsequently experienced complications with her pregnancy. On August 15, 2002, based on her doctor's instructions that she was unable to work for medical reasons, Schnoor informed the human resources department that she "would like to pursue going on disability." Schnoor left the office that same day, and began her leave of absence. Schnoor was on medical disability leave from PIL from August 15, 2002 through January 8, 2003, during which time she evidently was paid a percentage of her salary for the majority, if not all, of that period.[2] PIL never informed Schnoor that 12 weeks of that leave would count as her FMLA leave. On November 9, 2002—12 weeks and two days after commencing her leave—Schnoor gave birth to her baby by caesarean section. Just over seven weeks later, on December 30, 2002, Schnoor sent an email message to PIL stating "I would like to request 4 weeks off, unpaid, under the Family Leave Act. I would begin FMLA on January 9, 2003, and return to PIL on Monday, February 3, 2003." PIL granted the additional leave Schnoor requested. During that additional leave period, Schnoor was paid her salary for 15 days for personal time off for the year 2003 (because under PIL's

---

[2] According to PIL, Schnoor was on long term disability leave from August 15, 2002 through December 31, 2002. (Def.'s L.R. 56.1 Statement of Undisputed Facts at ¶ 19.) Schnoor denies that fact because PIL failed to offer support for it. (Pl.'s Resp. to Def.'s L.R. Statement of Undisputed Facts at ¶ 19.) Schnoor instead contends that PIL's company policy was to offer three weeks of short term disability, then one week of float, followed by long term disability. (Pl.'s Statement of Additional Facts at ¶ 26.) Schnoor further contends that she was on a medical leave of absence from August 15, 2002 through January 8, 2003 (rather than December 31, 2002 as PIL claims). Both of those facts are deemed admitted due to PIL's failure to answer Plaintiff's Statements of Additional Facts. N.D. Ill. L.R. 56.1. In any event, Schnoor was on some form of disability leave from August 15, 2002 through January 8, 2003. A person on short term disability receives 80% of her salary, whereas a person on long term disability receives 60% of her salary. (Pl.'s Statement of Additional Facts at ¶¶ 27-28.)

2

personnel policies, personal time off was immediately available at the beginning of the year). Three weeks later, on January 21, 2003, PIL informed Schnoor that her employment would be terminated effective January 31, 2003 at 5:00 p.m.[3]

Schnoor subsequently commenced this lawsuit alleging that PIL violated the FMLA by failing to grant her leave to which she was entitled and retaliating against her for exercising her FMLA rights by terminating her while she was on leave.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the movant sets forth its argument, properly supported by the record, that there is no genuine issue of material fact requiring trial, the burden shifts to the nonmovant to identify specific facts that preclude summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[U]nless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," there is no issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[3]Numerous other facts are disputed. For example, the parties dispute whether Schnoor was failing to meet performance expectations before her leave commenced and the reasons for her termination. Schnoor also disputes a number of the facts set forth in PIL's Statement of Undisputed Facts because PIL failed to provide support for those facts as required by N.D. Ill. L.R. 56.1. However, none of the disputed facts are material for purposes of resolving the motion for summary judgment.

## B. The FMLA

"The FMLA was enacted to help working men and women balance the conflicting demands of work and personal life. It does so by recognizing that there will be times in a person's life when that person is incapable of performing her work duties for medical reasons." *Price v. City of Fort Wayne*, 117 F.3d 1022, 1024 (7th Cir. 1997). "The twin purposes of the FMLA are to 'balance the demands of the workplace with the needs of families' and to 'entitle employees to take reasonable leave for medical reasons.'" *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998) (quoting 29 U.S.C. §§ 2601(b)(1-2)). "The FMLA seeks to accomplish its purposes 'in a manner that accommodates the legitimate interests of employers.'" *Id.* (quoting 29 U.S.C. § 2601(b)(3)).

To advance its goals, the FMLA contains two types of provisions: prescriptive provisions that create a series of substantive rights and proscriptive provisions that protect employees who exercise their substantive rights from discrimination or retaliation. *Id.* at 159-160. Regarding the substantive rights provided by the FMLA, one of the primary entitlements is that an eligible employee[4] may take up to 12 weeks of leave in a one-year period "for reasons that include the birth of a child, the illness of an immediate family member, or the serious health condition of the employee himself." *Phelan v. City of Chicago*, 347 F.3d 679, 683 (7th Cir. 2003) (citing 29 U.S.C. § 2612(a)(1)); *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86 (2002). In

---

[4] Subject to certain exceptions not applicable in this case, an employee is eligible for FMLA leave if she has been employed by the employer for at least 12 months and has worked at least 1,250 hours of service with that employer during the previous 12 month period. 29 U.S.C. § 2611(2)(A). It is undisputed that Schnoor was an "eligible employee," as defined by § 2611(2)(A).

4

addition to the 12 weeks of leave,[5] the employee is also entitled to group health coverage during the leave, 29 U.S.C. § 2614(c)(1), and to be reinstated to the employee's original position or to an "equivalent position" upon timely returning from a qualified absence. *Ragsdale*, 535 U.S. at 86 (citing 29 U.S.C. § 2614(a)(1)).

Beyond creating substantive statutory entitlements, "the FMLA also affords employees protection in the event they are discriminated [or retaliated] against for exercising their rights under the Act." *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999). "Specifically, '[a]n employer is prohibited from discriminating against employees . . . who have used FMLA leave[]' . . . [and] may not consider the taking of FMLA leave as a negative factor in employment actions." *Id.* (quoting 29 C.F.R. § 825.220(c).)

### C. Schnoor's Entitlement Claim

Schnoor's first theory of recovery is that PIL interfered with her ability to take the 12 weeks of leave to which she was entitled under the FMLA. In order to establish her claim that PIL interfered with her substantive rights under the FMLA, Schnoor must demonstrate by a preponderance of the evidence that she is entitled to the benefit she claims.[6] *Kohls v. Beverly*

---

[5]FMLA leave may be unpaid, 29 U.S.C. § 2612(c), but need not be. An employee may elect, or an employee may require an employee, to substitute paid leave for any part of the 12-week period. 29 U.S.C. § 2612 (d)(2)(A).

[6]In seeking summary judgment, PIL contends that to establish a prima facie case for a claim under the FMLA, the plaintiff must prove that she is protected under the FMLA, that she suffered an adverse employment decision, and that she was either treated less favorably than an employee who did not seek leave under the FMLA or that the adverse decision was made because of her request for leave. (Def.'s Mem. Supp. Mot. Summ. J. at 4.) This is not the standard for an entitlement claim, at least not in this Circuit. The employee only needs to demonstrate that she is entitled to the benefit claimed (*e.g.*, 12 weeks of leave or reinstatement after such leave). *Kohls*, 259 F.3d at 804; *King*, 166 F.3d at 891; *see also Parker v. Hahnemann Univ. Hosp.*, 234 F. Supp. 2d 478, 485 (D.N.J. 2002) (for entitlement claim, plaintiff need not show that employer treated other employees more favorably, and employer cannot justify action by showing that it was unintended or that there was a legitimate business reason for it).

5

*Enter. Wis., Inc.*, 259 F.3d 799, 804 (7th Cir. 2001). To do so, a plaintiff must establish that: "1) she is an eligible employee; 2) she was entitled to take leave under the FMLA; 3) she gave notice to [her employer] of her intention to take leave; and 4) [her employer] denied her the benefit to which she was entitled under the FMLA." *Sabatino v. Flik Int'l Corp.*, 286 F. Supp. 2d 327, 335 (S.D.N.Y. 2003). Here, the dispositive question is whether Schnoor was entitled to FMLA leave when she requested an additional 4 weeks of leave on December 30, 2002. If she had already exhausted her FMLA leave at that time, then she was no longer entitled to FMLA leave and cannot establish an interference claim under the FMLA. *Panto v. Palmer Dialysis Center/Total Renal Care*, No. CIV.A. 01-6013, 2003 WL 1818990, at *6 (E.D. Pa. Apr. 7, 2003) (granting summary judgment for employer on interference claim because the employee had used all 12 weeks of her FMLA leave at time her employment was terminated, and thus was not entitled to FMLA leave). In other words, if Schnoor had already taken her 12 weeks of FMLA leave, any subsequent leave that she took was not protected under the FMLA and thus cannot serve as the basis for an FMLA claim. *Farina v. Compuware Corp.*, 256 F. Supp. 2d 1033, 1054 (D. Ariz. 2003) (to bring a cause of action under FMLA, "[p]laintiff must show that she was still protected by the 12-week leave period mandated by the FMLA").

It is undisputed that Schnoor had been on a leave of absence for more than 19 weeks at the time she requested FMLA leave on December 30, 2002.[7] PIL contends that Schnoor was no longer protected by the FMLA at that time, having already received more leave than she was

---

Accordingly, the parties' arguments regarding whether Schnoor suffered an adverse employment action and whether there was a legitimate business reason for her discharge are not relevant to the court's evaluation of Schnoor's claim for interference with her FMLA rights.

[7]Schnoor had been on leave since August 15, 2002.

entitled to under the FMLA. Schnoor, on the other hand, argues that because PIL failed to designate the leave she took prior to January 9, 2002 as FMLA leave and also failed to notify her of any such designation, she was still entitled to 12 weeks of FMLA leave beginning January 9, 2003, and thus was protected under the FMLA when PIL terminated her.

Schnoor's argument relies heavily on the notice provisions set forth in 29 C.F.R. § 825.208, one of the regulations enacted by the Secretary of Labor that requires "employers to inform their workers about the relationship between the FMLA and leave granted under company plans." *Ragsdale*, 535 U.S. at 87. Section 825.208(a) states that "[i]n all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee . . . ." Further, under § 825.208(c), although an employer is entitled to require paid leave to be substituted for unpaid leave, or that paid leave taken under an existing leave plan be counted as FMLA leave, the employer is obligated to make the designation promptly.[8] Section 825.208(c) also provides that:

> If the employer has the requisite knowledge to make a determination that the paid leave is for an FMLA reason at the time the employee either gives notice of the need for leave or commences leave and fails to designate the leave as FMLA leave (and so notify the employee in accordance with paragraph [§ 825.208(b)]), the employer may not designate the leave as FMLA leave retroactively, and may designate only prospectively as of the date of notification to the employee of the designation. In such circumstances, the employee is subject to the full protections of the Act, but none of the absence preceding the notice to the employee of the designation may be counted against the employee's 12-week leave entitlement.

---

[8]According to § 825.208(c), the designation must be made within 2 business days after the employer receives notice of the employee's need for leave if the employer has sufficient information to determine that the leave is for a qualified FMLA reason. Alternatively, if the employer does not have sufficient information to conclude that the leave is for an FMLA reason until a later point in time, the employer must notify the employee upon determining that the leave qualifies as FMLA leave. 29 C.F.R. § 825.208(c).

7

However, the validity of § 825.208's individualized notice provisions is questionable in the wake of the Supreme Court's decision in *Ragsdale*. *E.g., Wright v. Owens-Illinois, Inc.*, No. 2:02-CV-223-LJM-WGH, 2004 WL 1087359, at *8 (S.D. Ind. May 14, 2004) (citing cases).

In *Ragsdale*, after taking 30 weeks of leave to recover from cancer, the employee requested additional leave. 535 U.S. at 84-85. Her employer denied the request for an extension, and fired her after she failed to return to work. *Id.* at 85. Because her employer had never notified her that 12 weeks of the absence would count as her FMLA leave, the employee subsequently sued under the FMLA, alleging that as the result of her employer's failure to comply with certain Labor Department regulations, she was entitled to 12 weeks of FMLA leave in addition to the 30 weeks she had already taken. *Id.* at 84-85. The specific provision the employee relied on was 29 U.S.C. § 825.700, which provides: "If an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement." The Supreme Court invalidated § 825.700, however, holding that the regulation "effects an impermissible alteration of the statutory framework . . . ." *Ragsdale*, 535 U.S. at 96. In so ruling, the Court noted that § 825.700 automatically required an employer to give an employee an additional 12 weeks of leave in the event the employer failed to comply with the notice regulations, whether or not the employee was able to prove "any real impairment of their rights and resulting prejudice[,]" thus fundamentally altering the FMLA cause of action. *Id.* at 90. The Court further reasoned that mandating additional leave in the event of a notice violation even if the employee suffered no harm "amends the FMLA's most fundamental substantive guarantee—the employee's entitlement to 'a total of 12 workweeks of leave in any 12-month period.'" *Id.* at 93 (quoting 29 U.S.C. § 2612(a)(1)).

The Court thus affirmed summary judgment in favor of the employer, finding that Ms. Ragsdale's FMLA rights were not prejudiced by the lack of notice, *id.* at 90, and that the FMLA guaranteed Ms. Ragsdale only 12 weeks of leave, not 12 weeks in addition to the 30 she had already taken. *Id.* at 96.

Although the Supreme Court in *Ragsdale* purposefully declined to address the validity of the notice and designation provisions set forth in § 825.208, *id.* at 88, district courts subsequently have applied the reasoning and holding of *Ragsdale* to cases involving § 825.208. *E.g., Donahoo v. Master Data Center*, 282 F. Supp. 2d 540, 555 (E.D. Mich. 2003); *Phillips v. Leroy-Somer North Am.*, No. 01-1046-T, 2003 WL 1790941, at *6 (W.D. Tenn. Mar. 28, 2003); *Farina*, 256 F. Supp. 2d at 1055-1056. Accordingly, "[a]fter *Ragsdale*, an employer's failure to give notice that leave has been designated as FMLA leave, standing alone, does not violate the FMLA. A plaintiff must demonstrate that the lack of notice caused her FMLA rights to be prejudiced." *Wright*, 2004 WL 1087359 at *9; *Farina*, 256 F. Supp. 2d at 1056.

Here, no reasonable trier of fact could conclude that Schnoor's FMLA rights were prejudiced by PIL's failure to notify her that 12 weeks of her leave would count as her FMLA leave. If an FMLA plaintiff would have needed to stay on leave for more than 12 weeks whether or not the leave was FMLA leave, there is no evidence that the plaintiff would have exercised her FMLA rights differently had she known her FMLA leave was running. *See Ragsdale*, 535 U.S. at 90-91 (granting summary judgment for employer where there was no evidence that employee would have exercised her FMLA rights differently if she had received required notice). As a result, where the undisputed evidence shows that an FMLA plaintiff was unable to return to work after 12 weeks of leave, courts generally regard that "as proof that the plaintiff did not

detrimentally rely on any misrepresentations [or omissions] under the FMLA's notice provisions." *Farina*, 256 F. Supp. 2d at 1056 (granting summary judgment for employer); *Donahoo*, 282 F. Supp. 2d at 555 (same).

The ruling in *Donahoo* is instructive here. In *Donahoo*, the issue was whether the plaintiff, who had sustained serious injuries in a car accident, was still protected under the FMLA after being on medical leave for six months. 282 F. Supp. 2d at 544, 555-556. Her employer placed her on paid disability leave, but never informed her that the first 12 weeks of her leave would count as her FMLA leave. *Id.* at 554. Despite the notification deficiency, the district court granted summary judgment in favor of the employer, finding that the plaintiff was unable to show that she was prejudiced by her employer's failure to provide proper notice. *Id.* at 555-556. It was undisputed that the plaintiff could not have returned to work after 12 weeks due to her injuries. *Id.* at 555. As a result, even if her employer had notified her that the first 12 weeks would count as her FMLA leave, she could not have returned to work when her FMLA leave was exhausted. Instead, "she would have had to switch to [her employer's] own disability leave at the expiration of her FMLA leave, and upon her return, she would have returned from her employer's [voluntary] leave, not her FMLA leave." *Id.* at 556. Finding no prejudice from the lack of notice, the court ruled that the plaintiff lost the protection of the FMLA after the first 12 weeks of her leave ended, and granted summary judgment for the employer. *Id.* at 555-556.

As in *Donahoo*, summary judgment is appropriate here. Like the plaintiff in *Donahoo*, Schnoor had already been on a leave of absence for more than four months when she requested additional leave under the FMLA. PIL placed Schnoor on paid disability leave, but did not inform her that 12 weeks of her leave would count as her FMLA leave, so like the employer in

*Donahoo*, PIL violated the notice provisions set forth in § 825.208. But as in *Donahoo*, and despite Schnoor's arguments to the contrary, there is no evidence that Schnoor's FMLA rights were prejudiced as a result of PIL's failure to designate her leave as FMLA leave and notify her of the designation. According to Schnoor, if PIL had notified her that she had exhausted her FMLA leave, then "she would have returned to work at the end of her maternity leave"—*i.e.*, on January 9, 2003.[9] (Pl.'s Mem at 6.) This argument is flawed. The relevant question is not whether Schnoor would have returned to work in January when her maternity leave ended if she had known that she had no FMLA leave left. Rather, the relevant question is whether Schnoor would have returned to work at the end of her first 12 weeks of leave if she had known those weeks counted as her FMLA leave. *Donahoo*, 282 F. Supp. 2d at 555; *Farina*, 256 F. Supp. 2d at 1057. As in *Donahoo*, Schnoor could not have returned to work at the end of the first 12 weeks of leave. Schnoor began her leave of absence on August 15, 2002, so her first 12 weeks of leave ended on November 7, 2002. Schnoor does not suggest that she would have returned to work on November 8, 2002—nor could she credibly do so, in light of the fact that she did not even give birth to her baby until November 9, 2002. Schnoor offers no evidence that she would have exercised her FMLA rights differently had she known her FMLA leave was running. *See Ragsdale*, 535 U.S. at 90-91. (In fact, the undisputed evidence shows that Schnoor received far more than the 12 weeks of leave she was entitled to under the FMLA.) Accordingly, Schnoor cannot demonstrate that she was prejudiced by PIL's failure to notify her that 12 weeks of her

---

[9] Schnoor also contends that the lack of notice prejudiced her because she was not allowed to take the requested FMLA time. This argument is not supported by the facts: PIL granted Schnoor all the leave she requested. It is undisputed that PIL allowed Schnoor to take far more than the 12 weeks of leave she was entitled to under the FMLA, including the additional leave she requested on December 30, 2002.

leave would count as her FMLA leave. *Donahoo*, 282 F. Supp. 2d at 555-556; *Farina*, 256 F. Supp. 2d at 1056-1057.

Additionally, it makes no difference whether PIL told Schnoor that the additional 4 weeks of leave she requested on December 30, 2002 would be FMLA leave. Even if Schnoor relied on that representation, her reliance did not detrimentally effect her FMLA rights. *Farina*, 256 F. Supp. 2d at 1057. When she requested the additional leave, she had already taken more than the 12 weeks she was entitled to under the FMLA. After the initial 12 week period expired in early November 2002, Schnoor was no longer protected by the FMLA. *Id.* Because she was no longer protected by the FMLA when the representation was made in late December or early January, her FMLA rights were not prejudiced because she no longer had FMLA rights to protect. *Id.*

No reasonable jury could conclude that Schnoor's FMLA rights were prejudiced by PIL's failure to notify her that 12 weeks of her leave would count as her FMLA leave. The court therefore grants summary judgment in favor of PIL on Schnoor's entitlement claim.

### D. Schnoor's Retaliation Claim

Schnoor's other theory of recovery is that PIL terminated her in retaliation for exercising her FMLA rights in violation of 29 U.S.C. § 2615(a)(1). *See Sabatino*, 286 F. Supp. 2d at 339 (claim that employer retaliated against employee for exercising FMLA rights falls under § 2615(a)(1).) Specifically, Schnoor contends that she was terminated in retaliation for requesting the additional 4 weeks of leave on December 30, 2002. (*See* Pl.'s Resp. Mem. at 10.) Although the reasons for her termination are disputed, the timing of the decision is not: according

to both parties, PIL made the final decision to terminate her employment in January 2003.[10] "The Act prohibits an employer from retaliating against an employee who attempts to exercise any FMLA-created right." *Walker v. Elmore County Bd. of Ed.*, 379 F.3d 1249, 1250 (11th Cir. 2004). To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the adverse employment action and her exercise of FMLA rights. *King*, 166 F.3d at 892. As explained below, following the reasoning in *Walker*, the court concludes that Schnoor was not engaged in statutorily protected activity when she requested additional leave on December 30, 2002, so her retaliation claim cannot survive summary judgment.

In *Walker*, an employee who requested maternity leave before she was eligible under the FMLA sued her employer for retaliating against her in violation of the FMLA.[11] In affirming

---

[10] Schnoor suggests that there is a dispute regarding who decided to terminate her, and when the decision was made. Careful review of the parties' submissions shows there is no material dispute, however. Although the parties dispute whether PIL had considered terminating Schnoor before she went on leave in August 2002, it is undisputed that no decision was made to terminate her before she went on leave. Regarding who made the decision to terminate her, although there is no single statement of undisputed fact the court can cite to, both Schnoor and PIL represent that Louis Weber made the decision to terminate her. (Am. Compl. ¶ 14 (plaintiff alleges Weber made the decision); Def.'s L.R. 56.1 Statement of Facts ¶ 33 (defendant asserts Weber made the decision); Weber Dep. at 33:13-17 (Weber testifies he made the decision).) Further, although the parties dispute the reasons for the termination—PIL maintains Schnoor was terminated for poor performance while Schnoor maintains she was retaliated against for exercising her FMLA rights—they agree that the decision was made in January 2003. Again, there is no single statement of undisputed fact supporting this time frame. But PIL maintains that Weber made the decision to terminate Schnoor in January 2003—which is consistent with Schnoor's contention that the decision was made within three weeks after she requested additional leave. (Def.'s L.R. 56.1 Statement of Undisputed Facts ¶ 32 (plaintiff denied for various other reasons); Pl.'s Resp. Mem. at 11.). In any event, the undisputed evidence shows that she was notified of her termination on January 21, 2003, and that her termination was effective January 30, 2003.

[11] The plaintiff in *Walker* also brought an entitlement claim, which she lost on summary judgment because she was not an eligible employee. *Walker*, 379 F.3d at 1251. The only issue on appeal was

13

summary judgment for the employer on the retaliation claim, the Eleventh Circuit held that the employee's request for leave was not protected by the FMLA because she was not eligible for FMLA leave; as a result, she could not establish that she engaged in statutorily protected activity. *Walker*, 379 F.3d at 1252. In reaching its decision, the Eleventh Circuit explicitly rejected the argument that "the FMLA protects a request for FMLA leave regardless of whether the employee would have been eligible for the leave." *Id.* at 1253. The court held that the FMLA does not protect an ineligible employee who mistakenly requests FMLA leave because the "FMLA makes it unlawful for an employer to interfere with the attempt "to exercise[] any right *provided under this subchapter*," 29 U.S.C. § 2615(a)(1) . . . and the right to leave is provided only to eligible employees." *Id.*

To have the right to FMLA leave, the employee must not only be eligible, the employee must still be "protected by the 12-week leave period mandated by the FMLA." *Farina*, 256 F. Supp. 2d at 1054. In *Walker*, the plaintiff was not eligible for FMLA leave because she had not worked for her employer for 12 months at the time her maternity leave would have commenced, and thus was not an "eligible employee" under § 2611(2)(A). *Id.* at 1251; 29 U.S.C. § 2611(2)(A) (to be eligible for FMLA leave, employee must have worked for employer for at least 12 months). Schnoor, in contrast, met the eligibility requirements of § 2611(2)(A) when she requested the additional leave, but she was no longer entitled to FMLA leave because she had already taken her statutory 12 weeks. *See* Section II.C, *supra*. This factual difference between the plaintiff in *Walker* and Schnoor is a distinction without a difference. In the court's opinion, it

---

whether her request for maternity leave when she was ineligible for FMLA leave "constitute[d] an attempt to exercise a FMLA right." *Id.* at 1250, 1251 n.7.

14

makes no difference whether the employee is not yet eligible for FMLA leave or the employee meets the eligibility requirements of § 2611(2)(A), but has used all of the leave to which she is entitled under the Act. "[T]he statute does not protect an attempt to exercise a right that is not provided by [the] FMLA . . . ." *Walker*, 379 F.3d at 1253. Just as there is no statutory right to take leave before an employee meets the eligibility requirements, *id.*, there is no statutory right to take leave after an employee exhausts the 12 weeks allotted under the FMLA. *See Ragsdale*, 535 U.S. at 93 (FMLA creates entitlement to "'a total of 12 workweeks of leave in any 12-month period'"). "When [Schnoor] did not return to work [in early November, after her first 12 weeks of leave expired], she was no longer protected by the terms of the FMLA, and was relying on benefits under [PIL's] voluntary leave plan." *Farina*, 256 F. Supp. 2d at 1057. Whether an employee has lost the protections of the FMLA, like Schnoor, or has not yet earned the protections of the FMLA, like the plaintiff in *Walker*, an employee who requests leave that she is not entitled to take under Act has not engaged in statutorily protected activity.

Because Schnoor was not engaged in statutorily protected activity when she requested additional leave on December 30, 2002, she cannot establish a prima facie case, which means her FMLA retaliation claim must fail. PIL is entitled to summary judgment on the retaliation claim.

## III. CONCLUSION

For the reasons explained above, the court grants summary judgment in favor of PIL on both Schnoor's FMLA entitlement claim and her retaliation claim.

ENTERED:

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge

Dated: July 7, 2005